**FARMERS STATE BANK, Plaintiff and Appellee,**

v.

**Howard J. SLAUBAUGH, Defendant and Appellant.**

**Civ. No. 10828.**

Supreme Court of North Dakota.

April 30, 1985.

Robert A. Wheeler, of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee.

Robert J. Udland (argued) and Gary R. Wolberg, of Fleck, Mather, Strutz & Mayer, Ltd., Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Howard J. Slaubaugh appealed from the district court's order denying his motion to vacate an execution, levy, and notice of sale on a judgment against Slaubaugh. We affirm.

During 1980 and 1981 Howard J. Slaubaugh borrowed from the Farmers State Bank (hereinafter Bank) in Leeds, North Dakota, for his farming operation. To secure three promissory notes totaling $120,035, Slaubaugh executed certain security agreements granting the Bank security interests in crops, livestock, and equipment owned or thereafter acquired by Slaubaugh. Slaubaugh failed to make payment

in full as required. The Bank subsequently demanded payment but Slaubaugh continued to be delinquent on the notes. The Bank initiated an action to collect the sums owed on the notes. Following a series of events involving a judgment entered pursuant to stipulation of the parties, and the failure of Slaubaugh to make payments in accordance with the agreement, execution was issued on January 6, 1983. On January 10, 1983, the sheriff executed a notice of levy and a notice of sale of Slaubaugh's real estate, such sale to be held on March 1, 1983. Notice of sale was published in the county newspaper, but the provisions of Section 28–23–04, N.D.C.C., concerning execution sales of real property were not met because the sale was scheduled for March 1, only six days after the last publication.

On January 25, 1983, Slaubaugh filed a claim for exemption pursuant to Chapter 28–22, North Dakota Revised Code of 1943 [currently Chapter 28–22, N.D.C.C.]. Slaubaugh stated in his claim for exemption that he was an actual, bona fide resident of Pierce County, North Dakota.

On February 14, 1983, Slaubaugh moved the district court to vacate the January 6, 1983, execution and the notice of execution sale dated January 10, 1983. He asserted that, among other reasons, the notice of execution sale was inadequate and that the real estate was exempt from execution because he had merely an equitable interest in the property by virtue of a contract for deed dated January 2, 1973. Slaubaugh submitted a proposed order of vacation to the district court which included language that the Bank could not have any further executions that sought to sell Slaubaugh's equitable interest in the real estate.[1] The Bank neither served nor filed a return or

---

**1.** Slaubaugh's proposed order vacating the execution provided:

"The defendant having moved this court by motion dated February 14, 1983, to vacate the execution issued in the above action on January 6, 1983, and the court having received no return or brief in opposition and no request for taking testimony or oral argument as pro-

vided in Rule 3.2, North Dakota Rules of Court, IT IS HEREBY ORDERED that the execution issued in the above case on January 6, 1983, is hereby vacated and decreed to be null and void. Further, IT IS ORDERED that the plaintiff shall not cause to have issued any further executions that seek to cause to be sold the defendant's equitable interest ..."

brief in opposition to Slaubaugh's motion to vacate.

The district court refused to sign Slaubaugh's proposed order but instead drafted and signed its own order vacating the January 6, 1983, execution.[2] The Bank did not take an appeal from the order vacating the January 6, 1983, execution.

In July of 1984, Slaubaugh came from Arizona to North Dakota for the purpose of testifying in his own behalf in another lawsuit. Slaubaugh had been living in Arizona with his wife. While Slaubaugh was in North Dakota the Bank served Slaubaugh with a second execution, a notice of levy, and a notice of sale. The new execution sought to enforce a judgment against Slaubaugh for $55,030.04 together with interest and costs. Included in the levy was all of the property of which Slaubaugh was the equitable owner pursuant to the contract for deed.

Slaubaugh filed a second "Schedule of Personal Property and Claim for Exemption" with the Pierce County district court. In his claim for exemptions Slaubaugh stated that he and his wife were actual, bona fide residents of Glendale, Arizona, where they had resided for more than six months.[3]

Slaubaugh again moved the court to vacate the execution, levy, and notice of sale for generally the same reasons stated in his first motion to vacate. Slaubaugh additionally alleged that the doctrine of res judicata required the second execution to be vacated because the Bank took no appeal from the April 6, 1983, order to vacate.

The district court issued an order denying Slaubaugh's motion to vacate the second execution.

In its consideration of Slaubaugh's motion to vacate the second execution the court also determined that Slaubaugh had abandoned his North Dakota homestead by taking up residence in Arizona. The court based this holding on a statement in Slaubaugh's second "Schedule of Personal Property and Claim for Exemption" where Slaubaugh stated that his residence at that time was Arizona.

Slaubaugh first contends on appeal that the district court erred in holding that the order of April 6, 1983, vacating the first execution was not res judicata to any subsequent attempt to execute upon, levy upon, and sell the same equitable interest in real estate that was the subject of the first motion to vacate.

This court has stated that the term "res judicata" can be defined as "a thing or matter that has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction." *Robertson Lbr. Co. v. Progressive Contractors, Inc.*, 160 N.W.2d 61, 76 (N.D. 1968), citing *Knutson v. Ekren*, 72 N.D. 118, 5 N.W.2d 74 (1942). This court in *Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180 (N.D.1977), in Syllabus ¶ 2, stated:

"2. In order for an issue to be considered res judicata, it is not enough to have been involved in an earlier action,

---

**2.** The district court's April 6, 1983, order vacating the January 6, 1983, execution provided:
  "The defendant having moved this Court by motion dated February 14, 1983, to vacate the execution issued in the above action on January 6, 1983, and the Court having received no return or brief in opposition and no request for taking testimony or oral argument as provided in Rule 3.2, North Dakota Rules of Court, IT IS HEREBY ORDERED that the execution issued in the above case on January 6, 1983, is hereby vacated and decreed to be null and void."

**3.** Slaubaugh's July 12, 1984, "Schedule of Personal Property and Claim for Exemption" stated, in part:

"That the undersigned, Howard Slaubaugh, [is] an actual bona fide resident of Glendale, Arizona, wherein he has resided for more than six months last past and is a married man and head of a family, consisting of his wife, Karen Slaubaugh, and 4 minor children, Jonnie, Beth, Carl, Ivonne, and that he and his wife actually reside in Glendale, Arizona, and have so resided for more than six months last past, ..."
Insofar as Karen Slaubaugh, Howard's wife, is concerned, the judgment, the execution, and the order denying the motion to vacate execution do not purport to apply to any separate interest she may have in the property involved in this matter.

but must have been actually litigated and decided in that action."

See *Matter of Estate of Nelson*, 281 N.W.2d 245 (N.D.1979). In *Nodland v. Nokota Co.*, 314 N.W.2d 89, 92 (N.D.1981), we said: "The doctrine of res judicata is not applicable as to issues and facts not considered or decided in prior proceedings."

■ In the case at bar, the record clearly demonstrates that the trial court considered only the issue of inadequacy of notice in ruling on Slaubaugh's first motion to vacate. In the trial court's letter order dated August 8, 1984, the court stated that the "motion to vacate execution dated February 14, 1983, was granted because the notice of the execution sale was inadequate," and that "[t]he Court neither considered nor decided the other issues raised by Defendant."

Furthermore, after counsel for Slaubaugh submitted his proposed "Order Vacating Execution," the trial court issued its order in the precise language proposed by counsel with the exception of the phrase "Further, IT IS ORDERED that the Plaintiff shall not cause to have issued any further executions that seek to cause to be sold the defendant's equitable interest in the following lands in Pierce County, North Dakota: [description omitted]." We believe that the message conveyed by the omission of that phrase was that the court had not ruled upon the substantive issues involved. We conclude that res judicata is not applicable in this case.

Slaubaugh contends, secondly, that even if the order of April 6, 1983, was not res judicata, an equitable interest in real estate nevertheless cannot be subject to execution, levy, and sale to satisfy an unsecured judgment.

■ There is no question that Slaubaugh, as vendee under the contract for deed, obtained an equitable interest in the property. When a vendor sells real estate under a contract for deed he retains legal title, while the vendee acquires equitable title to the property. *Cummings v. Duncan*, 22 N.D. 534, 134 N.W. 712 (1912); *Woodward v. McCollum*, 16 N.D. 42, 111 N.W. 623 (1907); *Wadge v. Kittleson*, 12 N.D. 452, 97 N.W. 856 (1903).

■ It is true that at common law only property to which a debtor has legal title is subject to execution. 33 C.J.S. *Executions* § 40, p. 172. Thus, in the absence of a statutory provision to the contrary, an execution operates only on legal rights and titles, and not on equitable interests. Courts have taken the view that execution is available to reach equitable interests of a judgment debtor where the applicable statute provides in broad language that all property of the debtor shall be subject to levy. 30 Am.Jur.2d, *Executions*, § 160, pp. 533–534.

Section 28–21–08, N.D.C.C., indicates exactly what property is subject to execution in North Dakota: "All ... property, both real and personal, *or any interest therein*, of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action are subject to execution." [Emphasis added.]

■ Past decisions of this court have made it clear that an equitable interest in property, whether real or personal, is subject to execution, levy, and sale.

In *Van Cise v. Merchants' Nat. Bank*, 4 Dak. 485, 33 N.W. 897 (1887), the court, in construing Section 314, Code of Civil Procedure, Revised Codes of Dakota Territory (1877), a section containing language virtually identical to Section 28–21–08, N.D.C.C., held that an equitable interest in the stock of a corporation was subject to levy and sale under execution.

This court in *Cummings v. Duncan, supra*, held that while the mere docketing of a judgment created no lien on the equitable interest under a contract for deed, such an interest could be levied upon under an execution. See Standard No. 10.05, Contracts for Deed, *North Dakota Standards of Title* (1978).

■ We conclude that an equitable interest in real estate under a contract for deed is subject to execution, levy, and sale.

Slaubaugh's final contention on appeal is that the trial court erred in ruling that he had abandoned his homestead in North Dakota. If Slaubaugh did abandon his homestead rights, the real estate would be subject to execution, levy, and sale to satisfy the judgment.

In *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325, 326–327 (1948), this court summarized the law concerning abandonment of homesteads and stated in the Syllabus:

"1. The law does not favor the abandonment of the homestead and the statutes must be liberally construed for the protection thereof.

"2. When a homestead status of property has been established, the burden of proving its abandonment, by the clear and convincing preponderance of the evidence, is on the party who alleges such abandonment.

"3. To constitute an abandonment of homestead rights removal from the premises must concur with an intention to discontinue their use as a home."

■ To find abandonment, the trial court must determine that the debtor has voluntarily departed from the homestead property and left without the intent to return and occupy it as a home. *Grotberg v. First Nat. Bank*, 54 N.D. 548, 210 N.W. 21 (1926); *Smith v. Spafford*, 16 N.D. 208, 112 N.W. 965 (1907). The dominant element in abandonment is intent. Because a debtor's subjective intent is not a reliable indicator, a trial court often will look to the objective intent which the debtor's conduct manifests. See 1 *American Law of Property*, § 5.113, p. 886 (A. James Casner, ed. 1952). See also 2A R. Powell, *The Law of Real Property*, § 263[6], at 406.12(14–15).

It was not disputed that Slaubaugh originally had established a homestead on his property in North Dakota. The only evidence before the trial court concerning the abandonment-of-homestead issue was Slaubaugh's statement made under oath that he was an actual, bona fide resident of Arizona. The trial court determined from this evidence that Slaubaugh had abandoned his homestead in North Dakota.

■ Slaubaugh requests that should this court decide adversely to him on the first two issues we should remand for an evidentiary hearing on the homestead issue. If granted such a hearing, Slaubaugh presumably would testify that he did not intend to give up his homestead rights in North Dakota by moving to Arizona. While Slaubaugh's testimony would be competent evidence for the trial court to consider on the abandonment issue, we believe it would not be conclusive on the issue. We stated in *Smith v. Spafford, supra,* 112 N.W. at 967:

"Facts and circumstances have a more convincing effect as evidence than such declarations made after matters have arisen that make such declarations essential to save the homestead. A removal, unexplained, at the time, is presumptively a permanent one. In *Jarvais v. Moe,* 38 Wis. 440, it was said: 'When he made the removal, the presumption was that he did so animo manendi. The presumption might be rebutted by circumstances and conditions surrounding the removal, or declarations accompanying it, manifesting a temporary purpose and an intention to return, but not satisfactorily by ex post facto professions, after intervening circumstances have made return advantageous. The intention which is sufficient to rebut the presumption must be positive and certain—not conditional or indefinite.'"

■ After reviewing the record, we note that Slaubaugh failed to rebut his very own statement that he and his wife were actual, bona fide residents of Arizona. We believe that Slaubaugh had sufficient opportunity at the time of making his motion to vacate (the execution) to present any additional evidence he might have concerning his intent to retain his homestead in North Dakota.

The order denying the motion to vacate is hereby affirmed.

ERICKSTAD, C.J., MESCHKE, J., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

LEVINE, Justice, concurring specially.

I write specially simply to emphasize my view that it is the appellant's total failure to have taken any affirmative action at the trial court level to prove his homestead right in the North Dakota property that compels the harsh result in this case. Given the favored place in our law and tradition which the homestead right enjoys, there may be avenues yet available to pursue a remedy.